## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTINE BRAMA,** | ) | |
| | ) | **No. 14 CV 6098** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **TARGET CORPORATION,** | ) | |
| | ) | **October 25, 2019** |
| **Defendant.** | ) | |

### MEMORANDUM OPINION and ORDER

Plaintiff Christine Brama claims that Defendant Target Corporation ("Target") is liable for personal injuries she sustained in August 2012 after she allegedly slipped and fell on a foreign substance near the entrance of a Target store. Before the court are Target's motions *in limine* Nos. 1-20. Brama opposes all 20 motions. For the following reasons, Target's Motion Nos. 1, 4-7, 9, 12, 13-17, 19, and 20 are granted, Motion Nos. 8, 10, and 18 are denied without prejudice, and Motion Nos. 2, 3, and 11 are denied:

### Background

Because Brama is acting *pro se*, the court finds it appropriate to describe the procedural history of this case only to provide extra context. In July 2014 Brama, then represented by attorneys, filed her negligence complaint against Target in state court. (R. 1.) Target then removed the case to this court based on diversity jurisdiction, (id.), and shortly thereafter Brama's attorneys sought and were granted leave to withdraw their appearances, (R. 13). Subsequently, the court

stayed the case until April 9, 2015, giving Brama 130 days to find a new attorney. (R. 13; R. 14.)

After Brama's new attorneys entered their appearances, the case proceeded to discovery. (R. 16; R. 17.) During that time, the court twice extended the discovery period—first at Brama's request and then at Target's—before discovery eventually closed in April 2016. (R. 24; R. 42; R. 151.) Following the close of discovery, and on the eve of Target filing a motion for summary judgment, Brama's second team of attorneys sought and were granted leave to withdraw their appearances. (R. 48; R. 49; R. 50; R. 54.) For over a year thereafter Brama acted *pro se*, opposing Target's summary judgment motion and filing her own motion for summary judgment and related motions to strike. (R. 66; R. 78; R. 81; R. 100.) The court denied the cross-motions for summary judgment in June 2017. (R. 112.)

The following month in July 2017, the court recruited an attorney to represent Brama in response to her motion for attorney representation. *See* 28 U.S.C. § 1915(e)(1); (R. 116; R. 118). Thereafter, on August 24, 2017, Brama (then represented by the court-recruited attorney) and Target consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 120). About two months later, Brama's court-recruited attorney also sought and was granted leave to withdraw as counsel of record. (R. 128.) Brama then filed two *pro se* motions seeking to withdraw her consent to proceed before this court, which the court denied. (R. 129; R. 131; R. 134.) Brama's subsequent challenges to that denial were also denied. (R. 140;

R. 149.)  Meanwhile, Brama requested and the court granted Brama two extensions of time to retain new counsel.  (R. 136; R. 142; R. 150.)

On December 4, 2018, Brama reported that she had not yet retained counsel. (R. 151.)  Consequently, the court advised Brama of her right to continue her efforts to retain counsel and took steps to move this 2014 case forward—namely, by setting deadlines for the parties to disclose their list of witnesses and exhibits for trial. (Id.)  In the interim, the court assigned a volunteer attorney to Brama for the limited purposes of assisting her with settlement discussions with Target.  (R. 157.) When settlement proved unsuccessful, (R. 167), the court ordered each side to file objections to the opposing side's witnesses and exhibits by July 15, 2019, (R. 172). Target timely filed its objections, but Brama did not.  (R. 175.)  Brama also did not comply with the court's orders to: comment on Target's objections by July 31, 2019, (R. 175; R. 180); submit proposed jury instructions by August 30, 2019, (R. 176; R. 180); and identify current Target employees she will call as witnesses at trial by September 13, 2019, (R. 176; R. 181).

A jury trial is now set to begin on October 29, 2019, and Brama has persisted in acting *pro se*.  (R. 176.)  A pre-trial conference took place on October 2, 2019, during which, in addition to setting the October 9, 2019 deadline for the parties to issue their trial subpoenas, the court scheduled dates for the filing of Target's motions *in limine* and Brama's responses thereto.  (R. 181.)  On October 3, 2019, Target filed its motions *in limine* Nos. 1-20.  (R. 182-201, Def.'s Mot. Nos. 1-20.)

Brama then filed her oppositions to Target's motions on October 18, 2019. (R. 206-225, Pl.'s Resps.)

## Legal Standard

Included in the district court's inherent authority to manage trials is the broad discretion to rule on motions *in limine*. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874-75 (7th Cir. 2011). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). The moving party bears the burden of proving blanket inadmissibility. *See Mason v. City of Chicago*, 631 F. Supp. 2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Anglin v. Sears, Roebuck & Co.*, 139 F. Supp. 2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial." *Bruce v. City of Chicago*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011). Rather, the court is free to revisit evidentiary rulings during trial as appropriate in the exercise of its discretion. *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## Analysis

### A.      Motion No. 1

Target seeks to bar Brama's treating physicians Drs. Randon Johnson, Ziauddin Ahmed, Hong Vo, and Victor Cimino from testifying as expert witnesses at trial. (R. 182, Def.'s Mot. ¶ 9.) Target asserts that although Brama identified and the court approved the treating physicians as witnesses, she did not comply with the Federal Rules of Civil Procedure 26(a)(2)(A) and 26(a)(2)(C), which required Brama to serve non-retained expert disclosures during discovery. (Id. ¶¶ 1-4.) Target thus argues that Brama should be "barred from presenting any expert testimony of any kind." (Id. ¶ 9.)

A party's obligation to identify its expert witnesses is set out in Rule 26(a)(2). Under Rule 26(a)(2)(A), "a party shall disclose to the other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." In addition, under Rule 26(a)(2)(C), if a witness is not "retained or specially employed to provide expert testimony" but nonetheless is expected to give expert testimony, then the party must also disclose "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the expert is expected to testify." Because "[d]isclosing a person as a witness and disclosing a person as an expert are two distinct acts," Rule 26(a)(2) requires formal disclosure of all witnesses who are to give testimony under Rules 702, 703, or 705 irrespective of any prior disclosures of witnesses or the fact

that the witnesses are "already known . . . through prior discovery." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004).

Target is correct that Brama did not provide any Rule 26(a)(2)(C) disclosure, or any other formal expert disclosure. Because Brama failed to disclose her treating physicians as expert witnesses as is required by Rule 26(a)(2), Rule 37(c)(1) prohibits them from testifying as expert witnesses at trial "unless the failure was substantially justified or is harmless." Target argues that Brama's failure is not substantially justified because this court reminded Brama of "her obligation to update discovery responses and make required disclosures under Rule 26(a)," (R. 182, Def.'s Mot. ¶ 7; R. 151), and Brama "should have known that expert testimony was crucial to her case, and likely to be contested," (R. 182, Def.'s Mot. ¶ 7) (internal citations omitted). Target also argues that Brama's failure is not harmless because Target "has been unable to depose those treating physicians" and was "prevented from identifying any rebuttal experts." (Id. ¶ 8.) Brama responds that the names of her treating physicians were disclosed by her former attorneys and in medical records authorization, and Target had an opportunity to depose them but chose not to do so. (R. 206, Pl.'s Resp. at 1.) Brama adds that "she is Pro Se and depends on [the] Court to be specific" and "was never ordered by the Court to supply a Rule 26(a)(2)(C) disclosure." (Id.)

The court finds that Brama's failure to properly disclose her treating physicians as expert witnesses, combined with her failure to provide the required report or summary under Rule 26(a)(2)(C), is not substantially justified or harmless.

As Target points out, Brama's main arguments are foreclosed by the decision in *Musser v. Gentiva Health Services*, 356 F.3d 751 (7th Cir. 2004), in which the Seventh Circuit affirmed the exclusion of expert testimony of the plaintiffs' witnesses—including treating physicians—first identified less than three months before trial. *Musser*, 356 F.3d at 754, 760. In that case, as is the case here, plaintiffs argued that they complied with expert disclosure rules because defendant was "made aware of the identity and records of all their witnesses" and "had an opportunity to depose these witnesses as to their opinions." *Id.* at 757. The Seventh Circuit rejected this argument, noting that formal disclosure of experts is essential for a party to properly prepare for trial. *Id.*

Here discovery has been closed for more than three years, since April 5, 2016, (R. 42; R. 151), and neither side has moved to have it re-opened. Regardless, the trial date is set for October 29, 2019, (R. 176), and there is no time to re-open discovery without causing significant prejudicial delay. During the almost six-year history of this case, Brama never attempted to disclose any witnesses as experts. Target should not be made to assume for purposes of its trial preparation that each treating physician previously disclosed by Brama's former attorneys or in medical records authorization could be an expert witness at next week's trial. Moreover, Brama's assertion that Target could have made such assumptions because it had this information does not provide substantial justification. *See Musser*, 356 F.3d at 759 (noting the fact "that defendant could have obtained the undisclosed information through its own efforts does not provide substantial justification"). Nor

does the fact that Target could have deposed her treating physicians. *Id.* It was Brama's responsibility to make proper Rule 26(a)(2) disclosures and she did not.

Brama's remark that "she is Pro Se and depends on [the] Court to be specific," (R. 206, Pl.'s Resp. at 1), essentially blames the court for her failure to supply Rule 26(a)(2)(C) disclosures, which is not an acceptable litigation strategy. In any event, Brama's *pro se* status does not provide substantial justification for her failure to supply Rule 26(a)(2)(C) disclosures (or make any other expert disclosure, for that matter) because the Seventh Circuit has held that "pro se litigants are not entitled to a general dispensation from the rules of procedure." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Moreover, and as discussed *infra*, Brama has been intermittently represented by counsel throughout the course of this litigation, including during discovery when such disclosures should have been made. Indeed, even when not represented by counsel, Brama has illustrated an understanding of the federal rules by filing motions and briefs, including two motions seeking to withdraw her consent to proceed before the court. (R. 129; R. 131.) Also, as noted by Target, the court has reminded Brama of her disclosure obligations under the federal rules. (R. 182, Def.'s Mot. ¶ 7; R. 151.) Thus the court concludes that Brama's current *pro se* status does not constitute substantial justification for her disclosure failures.

In further effort to divert blame away from herself and onto the court for her failure to properly disclose her treating physicians as expert witnesses, Brama contends that certain statements made by this court show "a bias" against her and

favoritism toward Target that makes her "very uncomfortable." (R. 206, Pl.'s Resp. at 2.) She also takes issue with the "MICRO-MINI printed" text size of the notices of case activity mailed to her by the clerk's office because "[i]t's an eye strain, brain-freeze and feels disrespectful to receive something that is barely readable." (Id.) Apart from the fact that Brama's complaints are not a basis for substantial justification, they are without merit. Brama has received numerous extensions of time to find new counsel, complete and respond to discovery, file and respond to motions, and submit her list of witnesses and exhibits for trial, all of which have contributed to the protracted history of this slip-and-fall case. Thus Brama's assertion that the court's acknowledgement of the fact that this case is indeed a "very old matter" and needs to be resolved "as soon as possible," (R. 172), somehow shows a bias is simply wrong. Further, Brama has been receiving notices of case activity from the clerk's office via mail since at least July 2016, (R. 55), and has never asserted that the text size of the notices that she now insists present her such a dilemma made her unable to meaningfully participate in this case. To the contrary, Brama has consistently and actively engaged in these legal proceedings.

Finally, Brama's failure to properly disclose her treating physicians as expert witnesses is not harmless. Although Target was not completely in the dark about the possibility of Brama's treating physicians testifying about Brama's medical condition, without advance notice that Brama intended to elicit expert opinions, Target was denied the opportunity to take certain countermeasures. *See Musser*, 356 F.3d at 758; *accord Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012).

Consequently, permitting Brama's treating physicians to give testimony at next week's trial based on scientific, technical, or otherwise specialized knowledge would cause incurable prejudice to Target.  Significantly, Target concedes that Brama's treating physicians "may still offer fact or lay opinion testimony, if otherwise admissible under the Federal Rules of Evidence," (R. 183, Def.'s Mot. ¶ 2), and the court finds that allowing Brama to call them as fact witnesses does not cause the same kind of incurable prejudice to Target.  Accordingly, Motion No. 1 is granted to the extent that Brama's treating physicians, if called to testify, may not offer expert opinions.  In other words, they are not allowed to testify about information that goes beyond observations they made during their treatment of Brama.

## B.    Motion No. 2

Target seeks to bar Brama's treating physicians Drs. Randon Johnson, Ziauddin Ahmed, Hong Vo, and Victor Cimino from offering testimony concerning their treatment of Brama "long after" August 13, 2012—the date of the alleged slip and fall.  (R. 183, Def.'s Mot. ¶¶ 1, 5.)  Target refers the court to the arguments it advances in Motion No. 1 but states that Brama's treating physicians "may still offer fact or lay opinion testimony, if otherwise admissible under the Federal Rules of Evidence."  (Id. ¶ 2.)  Target cites to *Williams v. State*, 49 Ill. Ct. Cl. 109 (1996), and *Hyatt v. Cox*, 57 Ill. App. 2d 293 (1st Dist. 1978), for the proposition that when the diagnosis of an injury is remote in time from the alleged incident, "expert testimony is required to show that the incident caused or is connected to the injury," (Id. ¶ 6).  Target argues that because Brama's treating physicians cannot render

expert opinions, Brama lacks proof of causation between the alleged slip and fall in August 2012 and the medical treatments she received long after the fall. Therefore, Target argues, testimony concerning "remote treatments" is "irrelevant, confusing, and prejudicial." (Id. ¶¶ 8-9.) Brama counters that "[t]here is no such thing as 'remote in time'" because "most" of her injuries "will never heal" and offers her recent emergency room visit as an example. (R. 207, Pl.'s Resp. at 1-2.)

Although the court disagrees with Brama's assertion that there "is no such thing as 'remote in time'" injuries, *see Williams v. State*, 49 Ill. Ct. Cl. 109, 112 (1996) (finding claimant's alleged back pain remote in time to slip and fall), the court finds that the evidence Target seeks to exclude may be relevant to Brama's negligence claim. While Brama's treating physicians may not offer expert testimony, they may, as Target concedes, testify to observations they made during their treatment of Brama. To the extent that Target contends that such treatment is too remote, it can pursue this line of questioning at trial and may argue this point to the jury. Furthermore, and contrary to Target's characterization of Illinois case law, expert testimony is not required to show that the incident caused or is connected to the injury. As stated in Target's parenthetical quote to *Hyatt* and further supported by *Williams*, "layman testimony may be insufficient to establish a *prima facie* showing of a causal relationship." *Hyatt*, 57 Ill. App. 3d at 299. In other words, the cases cited do not support a blanket prohibition of lay testimony in this context. For these reasons, Motion No. 2 is denied.

**C.     Motion No. 3**

Target seeks to bar any lay person's opinions and/or testimony regarding the nature and extent of Brama's alleged injuries.  (R. 184, Def.'s Mot. ¶ 1.)  More specifically, Target seeks to bar "[a]ny testimony regarding the observation" by Brama's "family members, friends, and former co-workers," as well as Brama's "description to family members or friends of [her] current disabilities or feelings and symptoms" as inadmissible hearsay.  (Id. ¶ 2.)  Target alleges that the admission of this lay witness testimony is effectively an expert opinion, which is "highly prejudicial" and "misleading" when unaccompanied by the testimony of a physician. (Id. ¶ 3.)    Brama contends that testimony regarding her injuries should be "welcomed" by the court and Target because "now they'll be able to hear [testimony] from the doctors that were responsible for" her care.  (R. 208, Pl.'s Resp. at 1.) Brama further asserts that the jury should hear "lay testimony to be aware of the extensive medical therapy and treatments that were given to her; whether it's testimony from a lay person or the treating physician."  (Id.)

Federal Rule of Evidence 701 restricts lay witnesses to providing opinions which are: (a) rationally based on the perception of the witnesses; (b) helpful to a clear understanding of the witness's testimony or the determination of a fact at issue; and (c) are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Therefore, Brama's daughter Arielle Brama may testify to their own perceptions and observations of Brama's current condition, but cannot, as Brama asserts, testify regarding "extensive medical therapy and

treatments that were given to her." (R. 208, Pl.'s Resp. at 1.) Relatedly, because Brama may call her treating physicians as lay witnesses, they too are limited to testifying to observations made during their treatment of Brama and are precluded from rendering medical opinions or reviewing materials outside of their own medical records to support their testimony. Target is free to raise an objection at trial if any lay witness testimony gets too close to eliciting an expert opinion.

Furthermore, to the extent that Brama's witnesses seek to testify to statements Brama made to them concerning medical matters, such as her "current disabilities or feelings and symptoms," such statements may constitute hearsay depending on the purpose for which they are being offered and Target is free to raise this objection at trial. *See Vujovich v. Chicago Transit Auth.*, 6 Ill. App. 2d 115, 120 (1st Dist. 1995) (finding plaintiff's "self-serving declaration" to her employer that her back was bothering her inadmissible hearsay when only issue at trial was the extent of plaintiff's injury). For these reasons, Motion No. 3 is denied.

## D. Motion No. 4

Target moves to bar Brama from testifying at trial regarding "statements made to her" by her treating physicians because, it argues, those statements constitute inadmissible hearsay under Federal Rule of Evidence 802. (R. 185, Def.'s Mot. ¶ 3.) Target correctly notes that the court sustained Target's objections to Brama's Exhibit Nos. 39, 41, 42, and 45, (R. 177), which are Brama's own written summaries of her treating physicians' diagnoses, (R. 163), and again highlights Brama's failure to produce Rule 26(a)(2)(C) disclosures of her treating physicians,

(R. 185, Def.'s Mot. ¶ 1). Consequently, Target argues that Brama might "attempt to present these treating physicians' statements or diagnoses through her own testimony." (Id.) Brama asserts that such testimony "should not be considered 'hearsay'" because "[i]t's what [she] has experienced" and "she should be allowed to present testimony about her physical condition and treating physicians." (R. 209, Pl.'s Resp. at 1.)

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Thus statements made to Brama by her treating physicians in the course of evaluating her condition, which she then describes through her own testimony at trial to prove the truth of her condition, *i.e.*, her alleged injuries, would be textbook hearsay. Under Federal Rule of Evidence 802, such hearsay testimony is not admissible. That is not to say that there are no exceptions, but Brama did not bring any to the court's attention in her response. Accordingly, Motion No. 4 is granted.

## E.    Motion No. 5

Target seeks to bar testimony concerning the amount of Brama's medical bills. (R. 186, Def.'s Mot. ¶ 1.) Target cautions that because Brama has not offered any medical bills as exhibits and the court sustained Target's objection to Brama's Exhibit 44, (R. 177), which is an "Itemization of Damages" drafted by Brama, (R. 163), Brama "will attempt to offer the amount of her medical bills through her own oral testimony or through that of her treating physicians," (Id. ¶ 2). Target

asserts that pursuant to Federal Rule of Evidence 1002 (the "Best Evidence Rule") and *Ruddick v. Regal Health & Rehab Center, Inc.*, No. 07 CV 7030, 2009 WL 3417474 (N.D. Ill. Oct. 20, 2009), Brama cannot prove her medical bills through oral testimony without offering the original medical bills into evidence. (R. 186, Def.'s Mot. ¶ 3.) In any event, Target argues that it would be "severely prejudiced" if Brama were permitted to testify to this information without the medical bills themselves being offered into evidence. (Id. ¶ 4.) Brama offers this single-sentence response: "[a] mention to the jury of the mounting bills from the fall should not be barred from the jury if the need to reveal the expenses of this fall created arises." (R. 210, Pl.'s Resp. at 1.)

The Best Evidence Rule provides that "[a]n original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. In *Ruddick v. Regal Health & Rehab Center, Inc.*, No. 07 CV 7030, 2009 WL 3417474, at *3 (N.D. Ill. Oct. 20, 2019), plaintiffs attempted to establish the contents of a collective bargaining agreement that was allegedly in place by submitting a self-serving affidavit that set forth the terms of the agreement. Defendants argued that the Best Evidence Rule prohibits the court from considering the affidavit to determine the contents of the collective-bargaining agreement because plaintiffs failed to produce a copy of the executed agreement. *Id.* at *3-4. The court agreed with defendants, noting that not only had plaintiffs not produced a copy of the collective bargaining agreement, but they also did not

cite any exception to Rule 1002 that could permit the court to consider the affidavit. *Id.* at *4.

Though the facts of *Ruddick* are distinguishable from this case, the court finds that the principle of the Best Evidence Rule is applicable here. Target points out that aside from a self-serving "Itemization of Damages" that Brama drafted and the court later deemed inadmissible, (R. 163; R. 177), Brama has not provided any underlying documents supporting her assertion that she has "mounting bills" from the alleged slip and fall. Nor has she cited any exception to Rule 1002 that could permit the court to consider her testimony regarding the same information. Therefore, Motion No. 5 is granted.

## F.    Motion No. 6

Target seeks to prevent Brama's daughter Arielle from offering "inadmissible hearsay and irrelevant testimony" because it anticipates that her testimony will be "substantially similar to the content of [Arielle's] affidavit." (R. 187, Def.'s Mot. ¶ 1.) Specifically, Target characterizes as inadmissible hearsay statements Brama made to Arielle regarding the events of the slip and fall, the condition of the Target store in July 2013, and the events portrayed in the surveillance video of the fall. (Id. ¶¶ 2, 5, 9.) Target asserts that Arielle's observations of the condition of the Target store in July 2013—one year after the alleged slip and fall—as well as her mother's physical reaction to the surveillance footage of the fall as "irrelevant testimony." (Id. ¶¶ 4, 7.) Target correctly notes that the court sustained its objection to Brama offering Arielle's affidavit at trial

because it amounts to hearsay testimony. (Id. ¶ 1; R. 177.) Brama asserts that Arielle's affidavit, which she refers to as a "Witness Statement," should "be allowed to be presented" and further states that Arielle's "testimony should not be considered 'irrelevant,'" (R. 211, Pl.'s Resp. at 1), but offers no arguments supporting her assertions.

With respect to statements made by Brama to Arielle about the August 13, 2012 fall, the condition of the store on that date, and the surveillance video, such statements clearly constitute inadmissible hearsay. On the subject of Arielle's observations of the condition of the Target store in July 2013, the court agrees with Target that such testimony is inadmissible to show the condition of the Target store at the time of Brama's fall a year before in August 2012. As to Arielle's observations of what she saw in the surveillance video footage and Brama's physical reaction to the same, they are not relevant or helpful as the jury will be able to view the video for themselves and draw their own conclusions. Therefore, Target's Motion No. 6 is granted.

## G.    Motion No. 7

Pursuant to Federal Rule of Evidence 408, Target moves to bar Brama from referencing any settlement negotiations, including writings, memos, letters or other documents related thereto. (R. 188, Def.'s Mot. ¶ 1.) Brama asserts that it is appropriate to mention anything "related to settlement negotiations" to the jury because, "Why not?" (R. 212, Pl.'s Resp. at 1.) The answer to Brama's question is found in the principles of law that apply under Rule 408, which make inadmissible

evidence of offers, acceptances, conduct, or statements made during settlement negotiations that are presented to prove a party's liability for or the invalidity of a claim or its amount. Therefore, Target's Motion No. 7 is granted.

## H.   Motion No. 8

Target moves to bar testimony or evidence regarding purported statements made by its former third-party contractor, Stephanie Duley, allegedly offering to pay Brama's medical bills and "anything else that was needed" after the fall. (R. 189, Def.'s Mot. ¶¶ 1, 4.) Target cautions that because Brama expressed her intent to call Duley as a witness at next week's trial, it anticipates Brama will elicit testimony from Duley regarding negotiating a settlement of Brama's claim. Such testimony, Target argues, is "inadmissible to prove the validity or amount" of Brama's claim under Federal Rules of Evidence 408(a) and 409. (Id. ¶¶ 3-4.) Brama makes no substantive response to Target's Motion No. 8 because Target did not serve a copy of the motion on her. (R. 213, Pl.'s Resp. at 1.) The court notes that Motion No. 8 was not included in the court's courtesy copies, either. Given these circumstances, Motion No. 8 is denied without prejudice. Target may raise this concern at trial if Duley is called to testify.

## I.   Motion No. 9

Target seeks to bar Brama from presenting evidence regarding or referring to any remedial measures taken subsequent to Brama's fall on August 13, 2012. (R. 190, Def.'s Mot. ¶ 3.) Target correctly argues that, pursuant to Federal Rule of Evidence 407, evidence of subsequent remedial measures, such as Target's alleged

replacement of the carpet at the entrance to its store sometime after Brama's fall, cannot be admitted "to prove negligence, culpable conduct, a defect, or a need for warning or instruction." (Id. ¶ 2); Fed. R. Evid. 407. Brama responds that the "jury has a right to this information and it should be admissible for that purpose." (R. 214, Pl.'s Resp. at 1.) Brama has not offered a legitimate purpose for the introduction of evidence of Target's subsequent remedial measures. Therefore, Motion No. 9 is granted.

## J.  Motion No. 10

Target seeks to bar Brama from presenting evidence through her own testimony or lay witness testimony regarding her "future mental anguish, future medical costs and future pain and suffering," because such testimony is "beyond common knowledge" and "pure speculation." (R. 191, Def.'s Mot. ¶ 1.) Target also cautions that Brama's lay witnesses may attempt to speculate as to Brama's past or present condition and argues that such testimony should be barred for the same reasons and would prejudice Target. (Id. ¶ 2.) Brama responds that the jury should be permitted to hear testimony regarding "future spine surgery" and "everyday pain," (R. 215, Pl.'s Resp. at 1), though Brama's response is not clear regarding the form of evidence she plans to present on these topics. Motion No. 10 is denied without prejudice. The court prefers to hear whether Brama will offer this information, how she offers the information, and in what context before ruling on its admissibility.

**K.     Motion No. 11**

Target seeks to bar Brama from asking questions that are speculative or call for a legal conclusion.  (R. 192, Def.'s Mot. ¶ 1.)  Brama counters that she should be able to ask questions at trial and if those questions are deemed speculative "then so be it," (R. 216, Pl.'s Resp. at 1), and the court agrees.  Motion No. 11 is denied. Target is free to raise an objection at trial if Brama's questions are speculative and/or call for a legal conclusion.

**L.     Motion No. 12**

Target seeks to bar non-party witnesses from the courtroom during trial apart from the witness actually testifying and those witnesses finally excused after testifying.  (R. 193, Def.'s Mot. ¶ 1.)  Target argues that barring the aforementioned witnesses from the courtroom during trial "would avoid the hazard of prejudice" and "eliminate the possibility of a mistrial resulting from a reference to improper material during the trial."  (Id. ¶ 2.)  Target also asserts that barring these witnesses would "inform counsel in advance of the trial concerning the proper limits of admissible evidence" and "serve to clarify and simplify the issues for the jury." (Id.)  Brama objects to the exclusion sought by Target's Motion No. 12 but does not explain the basis for her objection.  (R. 217, Pl.'s Resp. at 1.)  The exclusion of non-party witnesses from the courtroom is commonplace and good trial practice.  *See, e.g.*, *Perry v. Leeke*, 488 U.S. 272, 281 n.4 (1989); *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 820 (N.D. Ill. 2010).  Therefore, Motion No. 12 is granted.

**M.     Motion No. 13**

Target seeks to bar Brama from "implying, suggesting or inferring" that its conduct was "reckless, willful or wanton" because Brama's complaint does not contain any allegations supporting this type of conduct. (R. 194, Def.'s Mot. ¶¶ 1, 3.) Target argues that Brama has only alleged that her injuries resulted from Target's "ordinary negligence." (Id. ¶ 6.) Target adds that if Brama suggests Target's "conduct was intentional, reckless, willful or wanton, or in conscious disregard" of Brama's rights, the "specter of wrong" gets elevated "beyond mere negligence" and could support an award of punitive damages. (Id. ¶ 4.) Brama contends in her response that Target's behavior is "very obvious and should not be by-passed" by the court. (R. 218, Pl.'s Resp. at 1.)

As a threshold matter, Illinois law governs the court's consideration of the punitive damages determination in this diversity case. *See Republic Tobacco Co. v. North Atlantic Trading Co., Inc.*, 381 F.3d 717, 735 (7th Cir. 2004) ("In diversity proceedings, state law governs whether punitive damages are appropriate."). In Illinois, "punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Barton v. Chicago & Nw. Transp. Co.*, 325 Ill. App. 3d 1005, 1030 (1st Dist. 2001) (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186 (1978)). While the amount of punitive damages is a question for the jury, the determination as to

whether a case justifies the imposition of punitive damages is a matter of law for the judge. *Barton*, 325 Ill. App. 3d at 1031.

Here, Brama has not pleaded any allegations of reckless or willful and wanton conduct by Target. (R. 194, Def.'s Mot. ¶ 3.) Furthermore, in the almost six-year history of this case Brama has never so much as hinted at the fact that she is seeking punitive damages—not during discovery, not during the October 2, 2019 pre-trial conference, not even in her response to this motion. At this juncture, then, baring Brama from arguing, suggesting, or even inferring that Target's conduct was willful and wanton is necessary to prevent prejudice to Target. *Cf. King v. Chapman*, No. 09 CV 1184, 2014 WL 7450433, at * (N.D. Ill. Dec. 30, 2014) (denying the defendant's motion *in limine* to bar *pro se* plaintiff from seeking punitive damages because the defendant had prior notice of the plaintiff's demand for punitive damages). Therefore, Target's Motion No. 13 is granted.

## N.    Motion No. 14

Target seeks to bar "the mention of any insurance company, insurance administrator, or primary or excessive coverage" as "irrelevant and prejudicial." (R. 195, Def.'s Mot. ¶ 1.) Target also requests that the court instruct Brama and her witnesses to refrain from "making any remarks, inference, innuendo, or testimony of any nature which may inform the jury or infer to the jury that" Target was covered by "any type of liability insurance" at the time of Brama's fall because such occurrences would be in violation of Federal Rule of Evidence 411. (Id.) Though Brama declares that she does not plan "to mention insurance," she argues that she

should not be barred from presenting such evidence to the jury. (R. 218, Pl.'s Resp. at 1.) Rule 411 does not permit evidence of liability insurance for the purpose of showing negligence or wrongful conduct and here such evidence is both irrelevant and potentially prejudicial. Brama has not proffered another purpose for the introduction of this evidence. Therefore, Motion No. 14 is granted. Brama is prohibited from presenting evidence through her own testimony or lay witness testimony regarding this topic.

## O.    Motion No. 15

Target also seeks to bar Brama from presenting evidence of its net worth. (R. 196, Def.'s Mot. ¶ 3.) Target argues that its net worth is relevant only where punitive damage are at issue and that here "there has been no determination that such evidence is relevant and warranted." (Id. ¶¶ 2-3.) In support, Target cites to *Pickering v. Owens-Corning Fiberglas Corp.*, 265 Ill. App. 3d 806 (5th Dist. 1994). (Id. ¶ 2.) Brama asserts that Target's net worth "should be allowed to be mentioned in the context that it's offered," but neglects to expand on the potential applicable context. (R. 220, Pl.'s Resp. at 1.) That is perhaps because, as Brama notes, she has no plans to mention evidence of Target's net worth at trial. (Id.) Brama also asserts, however, that the evidence "just shouldn't be barred." (Id.) Target is correct that under Illinois law evidence of its net worth is only relevant to the issue of punitive damages, *see Pickering*, 265 Ill. App. 3d at 823, and, as discussed *infra*, Brama has never requested punitive damages. Therefore, and consistent with the court's ruling on Motion No. 13, Motion No. 15 is granted.

**P.      Motion No. 16**

Target seeks to bar Brama from making "send a message" comments during trial.  (R. 197, Def.'s Mot. ¶ 2.)  Target argues that "[i]t is improper to exhort jurors to 'send a message'" with their verdict and that the effect of these words is to "steer the jury down the wrong course."  (Id. ¶¶ 1-2.)  Brama counters that the facts of this case show that such "send a message" comments are appropriate, and she asserts, without any support, that such comments have "been allowed in most lawsuits." (R. 221, Pl.'s Resp. at 1.)  The court disagrees with Brama's assertion that "send a message" comments have "been allowed in most lawsuits" because most implies nearly or almost all.  Rather, arguments that the jury should "send a message" with its verdict are sometimes permitted where punitive damages are at issue.  *See, e.g.*, *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 445 (7th Cir. 2010); *Jones v. Chicago*, No. 14 CV 4023, 2017 WL 413613, at *5 (N.D. Ill. Jan. 31, 2017).  As discussed *infra*, Illinois law allows for punitive damages to be awarded in negligence cases under certain circumstances, but this case does not present such circumstances.  Therefore, and consistent with the court's ruling on Motion Nos. 13 and 15, Motion No. 16 is granted.

**Q.      Motion No. 17**

Target seeks to bar Brama from making "[r]eferences as to what a reasonable person would pay to avoid an accident" like the one at issue in this case.  (R. 198, Pl.'s Mot. ¶ 1.)  Target asserts that such references "suggest an erroneous standard" that departs from the purpose of compensatory damages, which according to the

Illinois cases cited by Target, is "to make the injured party whole." (Id. ¶ 2.) Target also argues that the probative value of references to what a reasonable person would pay is "substantially outweighed" by its prejudicial effects. (Id. ¶¶ 3-4.) Brama makes no attempt to substantively respond to the arguments in Target's motion, asserting only that she "should be allowed to argue any point to this fact." (R. 222, Pl.'s Resp. at 1.) In the absence of any compelling reason for references as to what a reasonable person would pay to avoid an accident like this, the court finds that Target has shown that the prejudicial effects of this evidence outweighs any probative value. Therefore, Motion No. 17 is granted.

## R.    Motion No. 18

Target moves to bar testimony discussing, mentioning, alluding, or referring to the idea that anyone other than Brama has been damaged by the accident on August 13, 2012. (R. 199, Def.'s Mot. ¶ 1.) Target argues that such testimony is prejudicial. (Id.) Target cites *LeMaster v. Chicago R.I. & P.R. Co.*, 35 Ill. App. 3d 1001, 1014 (1st Dist. 1976), for the general rule that the type of testimony it seeks to bar is generally disallowed "in an action for personal injuries where family support or conjugal rights are not at issue." (Id. ¶ 1.) Brama asserts that she has "a right . . . to provide evidence of damages suffered by anyone other than" herself. (R. 223, Pl.'s Resp. at 1.) Brama does not base this right on any statute, case law, or other legal authority. While the court declines to declare that Brama has a right to offer evidence regarding injuries suffered by non-parties in this case, it recognizes that there are instances in which such evidence is relevant to the issue of damages

and thus may be admitted into evidence. The very case Target relies on *LeMaster* acknowledges the same. *See LeMaster*, 35 Ill. App. 3d at 77-78 (reviewing cases where evidence of plaintiff's family circumstances was deemed admissible). As such, Motion No. 18 is denied without prejudice.

## S.    Motion No. 19

Target seeks to bar Brama and her witnesses from analogizing her alleged injuries to property damage and comparing her alleged injuries to injuries sustained by other plaintiffs in other cases. (R. 200, Def.'s Mot. ¶ 1.) The case Target relies on, *Goad v. Evans*, 191 Ill. App. 3d 283 (4th Dist. 1989), explicitly supports its argument. *See Goad*, 191 Ill. App. 3d at 310 (noting the focus of the jury's deliberations should be on the losses sustained by plaintiff, not losses sustained by non-parties or the worth of other property). Brama disagrees and argues that the court "should allow it." (R. 224, Pl.'s Resp. at 1.) Her conclusory assertion is insufficient to overcome Target's well-supported argument. Motion No. 19 is granted.

## T.    Motion No. 20

Target seeks to bar Brama from talking to prospective jurors regarding the facts of this case and/or attempting to illicit a pledge or promise from prospective jurors to return a substantial monetary verdict in her favor. (R. 201, Def's Mot. ¶ 2.) Target argues that such questioning during *voir dire* "indoctrinate[s] or pre-educate[s]" and "pre-conditions" the jurors before the trial begins. (Id. ¶¶ 1-2.) Target asserts that Brama's *voir dire* questioning should be limited to "asking

jurors whether they could fairly and reasonably compensate plaintiff under the evidence even if the compensation was in a substantial amount of money." (Id. ¶ 2.) Brama takes issue with Target's use of the phrase "award excessive damages," (Id. ¶ 1), because, according to her, "[w]hen there is chronic pain and permanent injuries involved that makes life hell for someone, excessive damages awards are really not excessive," (R. 225, Pl.'s Resp. at 1). Brama also asserts that Target's most recent settlement offer was "insulting," "an insult to injury," and "stone-cold-hearted" and attaches a copy of that settlement offer to her response. (Id. at 1, 3.) The court has broad discretion regarding the *voir dire* of potential jurors. *See Art Press v. Western Printing Mach. Co.*, 791 F.2d 616, 618 (7th Cir. 1986). Here Brama offers no real objection to Target's motion and, therefore, Motion. No. 20 is granted.

## Conclusion

For the foregoing reasons, Target's Motion Nos. 1, 4-7, 9, 12, 13-17, 19, and 20 are granted, Target's Motion Nos. 8, 10, and 18 are denied without prejudice, and Target's Motion Nos. 2, 3, and 11 are denied.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**